UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 15-2442-JG

UNITED STATES OF AMERICA

vs.

ANTONIO ARVELAIZ,

Defendant.
_____/

FILED by _____ D.C.

APR - 2 2015

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?    _____ Yes   __x__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?   _____ Yes   __x__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____
RICHARD D. GREGORIE
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 549495
99 N. E. 4th Street
Miami, Florida 33132-2111
TEL (305) 961-9148
FAX (305) 536-7213

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>ANTONIO ARVELAIZ,<br><br>Defendant(s) | Case No. 15-2442-JG |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **September 2014** in the county of **Miami-Dade** in the **Southern** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code Section 1343. | The defendant, Antonio Arvelaiz, did knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud and to obtain money and property from others by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communications in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

HSI, Special Agent Randal Hill
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/02/2015

*Judge's signature*

City and state: Miami, Florida       JONATHAN GOODMAN, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Randal Hill, a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent with HSI under Immigration and Customs Enforcement (ICE), United States Department of Homeland Security. I have been a Special Agent for approximately eleven years, and I am presently assigned to the Miami Field Office, Financial Crimes Task Force. I am responsible for conducting criminal investigations pertaining to currency violations, conspiracy and money laundering, and other federal criminal violations.

2. The information contained in this affidavit is based on my personal knowledge as well as information relayed to me by other law enforcement officers and civilian victims and witnesses. In addition, the information set forth below is provided solely for the purpose of establishing probable cause for the arrest of Antonio Guillermo ARVELAIZ (ARVELAIZ) for devising and intending to devise a scheme and artifice to defraud and to obtain money and property from others by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communications in interstate commerce, certain writings, signs, signals, pictures and sounds in violation of title 18 USC section 1343. As such, this affidavit does not include every fact known about this investigation. According to victims and witnesses listed below ARVELAIZ promises the exchange of Bolivares deposited in accounts in his name or in the name of a third party in banks in Venezuelan for USD to be provided to the victims in the Southern District of Florida. ARVALAIZ sent Venezuelan bank account deposit

information by wire in interstate and foreign commerce for the deposit of Bolivares in Venezuela. He further promised to return USD within 24hrs.

3. On or about July 11, 2014, I received information from a Miami-Dade County Attorney regarding a Venezuelan Black Market Currency Exchange (VBMCE) business operating between Venezuela and the Southern District of Florida. Information was also received that ARVELAIZ was the owner and operator of the business. Investigative leads also concluded that there were several victims of this scheme that resided in the United States and Venezuela who I personally have interviewed and received documents from regarding this business.

4. During August 2014, Witness 1 (W1) was interviewed in reference to W1 knowledge of the VBMCE. W1 stated that he/she was aware of an individual named ARVELAIZ who operated a VBMCE. W1 also stated that he was involved in several meetings where ARVELAIZ promised United States Dollars (USD) in exchange for Venezuelan Bolivares. W1 further stated that during one such meeting, ARVELAIZ provided detailed bank account information of a Banesco bank account, located in Venezuela, where several victims were instructed via electronic communication to deposit Venezuelan Bolivares.

5. On or about October 2, 2014, I interviewed Witness 2 (W2) in reference to his/her knowledge of the VBMCE operated by ARVELAIZ. W2 stated that after meeting ARVERLAIZ several years ago, a business relationship was established, in which W2 would introduce individuals to ARVELAIZ who wanted to exchange Venezuelan Bolivares for USD. One individual W2 introduced to ARVELAIZ was Victim 1(VI) who was instructed by ARVELAIZ to deposit approximately 2,170,000 in Venezuelan Bolivares into a Banesco account located in

2

Venezuela in return for approximately $100,000 USD to be delivered in the Southern District of Florida.

6. During an interview, V1 said that while he/she was in Venezuela, electronic instructions were sent to him/her by W2, on detailed account information on where to deposit approximately 2,170,000 in Venezuelan Bolivares into ARVERLAIZ's Banesco Venezuelan bank account. V1 deposited those funds in Venezuela on or about March 5, 2013. V1 never received USD from ARVELAIZ. V1 was forced to pursue a federal civil law suit against ARVELAIZ in the Southern District of Florida, in which V1 was awarded $300,000 for breach of contract. A default judgment order was issued by Untied States District Judge Joan A Lenard and AVRELAIZ has refused to comply with the Federal District Court order and has not paid V1

7. On or about October 8, 2014, I interviewed Victim 2 (V2) in reference to his knowledge of ARVELAIZ operating a VBMCE. V2 said that when he/she was in Venezuela, ARVELAIZ, instructed him/her via electronic communication, to place the functional equivalent of $75,000 in Venezuelan Bolivares into the account of a third party. V2 said that he/she was promised that once the deposit was made in Venezuela he/she would receive USD in his/her account located in the United States. Although V2 made the agreed upon deposit in Venezuela on or about March 31, 2013. ARVELAIZ has not returned the Bolivares or completed the USD exchange as promised to V2

8. Victim 3 (V3) was interviewed on or about October 9, 2014, in reference to his knowledge of VBMCE operated by ARVELAIZ. During an interview, V3 said that he was introduced to ARVELAIZ through a third party located in Venezuela. After getting to know ARVELAIZ, a business relationship was established, in which ARVELAIZ agreed to exchange

Venezuelan Bolivares for USD. It was agreed that V3 would deposit approximately 5,445,000 in Venezuelan Bolivares in exchange for $230,000 USD. After the agreement was made, ARVELAIZ provided V3 with his Banesco account information and instructions for making the deposit via electronic communication. V3 deposited the Bolivares as agreed on or about January 31, 2013. ARVELAIZ has not returned the Bolivares or completed the USD exchange as promised.

9. On or about October 9, 20014, Victim 4 (V4) was interviewed. During the interview, V4 said he became acquainted with ARVELAIZ via a third party. V4 said ARVELAIZ told him/her that he was in the business exchanging Bolivares for USD. After providing V4 with a rate of exchange for the Bolivares, V4 gathered several individuals who were in need of USD. Collecting the functional equivalent to approximately $100,000, V4 was instructed, via electronic communication, to deposit the Bolivares into an ARVELAIZ's Banesco bank account located in Venezuela. On April 25, 2013, V4 deposited the agreed upon amount of Bolivares into the account provided by ARVELAIZ. After waiting for months, ARVELAIZ did not return the Bolivares V4 deposited or provide the USD promised.

10. On or about March 27, 2015 Victim 5 (V5) was interviewed by SA Hill. During the interview V5 stated he/she was originally from Venezuela and has resided in the United States for approximately 5 years. V5 continued by stating that he/she became acquainted with ARVELAIZ because they both were in the export business. During a conversation V5 had with ARVELAIZ, ARVELAIZ said that he was also in the business of exchanging Venezuelan Bolivares for USD. ARVELAIZ continued by stating that once he received the agreed Bolivares in the bank account he designated in Venezuela, within 24Hrs, he would provide the functional

equivalent in USD. After coming to an agreement, V5 said that ARVELAIZ gave detailed instructions via electronic communication in reference to the bank account information located in Venezuela where V5 should deposit the Bolivares. In early December 2014, V5 deposited approximately 1,860,000 in Venezuelan Bolivares in the account designated by ARVELAIZ. V5 said he/she waited several days for approximately $150,000 USD, which was agreed upon as the return in USD. After waiting several months, ARVELAIZ has refused to return the Bolivares V5 deposited or the USD promised.

11. On or about March 27, 2015, I interviewed Victim 6 (V6) in reference to his knowledge of ARVELAIZ operating a VBMCE business in the Southern District of Florida. As the interview began, V6 said he/she operates his/her own business in the Southern District of Florida. V6 continued by stating he/she was introduced to ARVELAIZ as a business customer. Developing a business relationship, ARVELAIZ said he was able to exchange Venezuelan Bolivares for USD. V6 entered into an agreement with ARVELAIZ to place the equivalent of $300,000 in Bolivares into a Venezuelan bank account provided by ARVELAIZ. V6 said that ARVELAIZ provided the bank account information via electronic communication. After waiting several weeks V6 said that ARVELAIZ provided V6 a check dated February 12, 2015, for $285,000 on a United States bank for the dollars owed, but the check was returned for not sufficient funds. ARVELAIZ has refused to return the USD to V6.

12. Based upon the foregoing, I submit that there is probable cause to believe that Antonio ARVALAIZ knowingly and willfully devised a scheme and artifice to defraud and to obtain money and property from others by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and did

knowingly transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writing, signs, signals, pictures and sounds, in violation of 18 U.S.C. § 1343;

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

_____
RANDAL HILL, SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Sworn to and subscribed before me this
2nd day of April, 2015.

_____
JOHNATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE